UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re: )
)
ROBERT H. HORNSBY and RICHARD ) Case No. 04-07840-TOM13
R. RANDOLPH )
    Plaintiff/Creditor, )
vs. )
)
TIMOTHY FLOWERS )
    Defendant/Debtor. )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a Motion for Relief from the Automatic Stay ("Motion for Relief"), filed by Richard R. Randolph and Robert H. Hornsby ("the Movants" or "the Plaintiffs"). After notice, a final hearing for relief from stay was held on August 18, 2005. Appearing at the hearing were Cindee Dale Holmes, attorney for the Debtor, Timothy Flowers, Jr.("Debtor"); Henry Taliaferro, attorney for Richard R. Randolph and Robert H. Hornsby; and Charles King, Assistant Chapter 13 Trustee. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994) and the district court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(G).[2] The Court in this matter must decide

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984, issued by the United States District Court for the Northern District of Alabama provides: The general order of reference entered July 16, 1984, is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. § 157(b)(2)(G) provides:
(b)(2) Core proceedings include, but are not limited to--
(G) motions to terminate, annul, or modify the automatic stay[.]

whether Movants should be granted relief from the automatic stay. This Court has considered the pleadings, the arguments of counsel, the testimony,[3] the evidence admitted, and the law, and finds and concludes as follows.[4]

## I. Factual Background

The Movants contend that on May 8, 2003, City West Corporation ("City West") purchased the real property located at 1689 Fulton Avenue S.W., Birmingham, Alabama, 35211 (the "Property"). Mr. Flowers and his wife Gloria Flowers signed a Promissory Note dated July 9, 2003, in the amount of $53,500 plus interest to Bobby N. Floyd in return for a Mortgage Deed.[5] Debtor's Ex. 3 and 6. Mr. Flowers testified that Joel E. Williams gave him the Mortgage Deed. Mr. Flowers and his wife signed two copies of the Mortgage Deed and had them both notarized.[6] Mr. Flowers testified that he personally recorded his Mortgage Deed in the Probate Court of Jefferson County, Alabama, on November 13, 2003. See Debtor's Ex. 3. A Tax Assessment of the Property lists the owners as Timothy and Gloria Flowers as of November 23, 2003. Debtor's Ex. 5.

Mr. Randolph testified that in August 2003, he and City West each purchased a one-half

---

[3] This Court takes judicial notice of certain facts from its file in the main case. Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the contents of its own files. See ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (11th Cir. 1981).

[4] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[5] Although titled as a "Mortgage Deed" the language of the instrument indicates it may be a mortgage only. Mr. Flowers maintained at trial that this was his deed to the property. Pursuant to this mortgage, he testified he made payments to Bobby Floyd, Joel E. Williams, and to a lady named Doris, who took payments occasionally for Mr. Williams.

[6] Mr. Flowers testified that he kept one copy of the Mortgage Deed and Mr. Williams kept the other.

Case 04-07840-TOM13    Doc 65    Filed 09/09/05    Entered 09/09/05 07:54:27    Desc Main
Document      Page 2 of 13

interest in the Property from City West for $211,000. See Movant's Ex. 2.[7] The deed was recorded the next day in the Probate Court for Jefferson County, Alabama. Movant's Ex. 2.[8] In April 2005, City West conveyed its one-half interest in the Property to Robert H. Hornsby. Movant's Ex. 3.[9] In their Motion for Relief, the Movants contend the Debtor occupied the property at the time of their purchase. Proceeding No. 59. The Movants allege that they allowed the Debtor to remain on the property without a written lease and the Debtor made sporadic monthly payments to them. Id. The Debtor offered receipts of payment into evidence, showing his payments on the mortgage to City West in 2003 and 2004.[10] Debtor's Ex. 1 and 2.

The Debtor filed this voluntary petition for Chapter 13 on September 7, 2004. Proceeding No. 1.[11] The Debtor filed a Chapter 13 Plan ("the Plan") Summary along with his Schedules on September 24, 2004. Proceeding No. 18 and 20. The Plan Summary proposed direct monthly payments to City West on the long-term debt of $60,000. Id. Schedule A showed the Debtor's interest in the Property and lists the current market value of the Property as $53,500, the amount of

---

[7] First Financial Bank held a mortgage on the property in the principal amount of $211,000. Movant's Ex. 1.

[8] The title insurance policy shows that City West and Mr. Randolph held a fee simple interest in the Property on August 21, 2003.

[9] The title insurance as of April 12, 2005, reflected that Mr. Randolph and Mr. Hornsby owned the Property in fee simple.

[10] Debtor's Ex. 1 is three receipts of payment on the Property for 2003. Two of the receipts are directly from City West Corp.; one receipt is from Joel E. Williams.
Debtor's Ex. 2 is five receipts of payment on the property for 2004, each from City West Corp.

[11] This Court takes judicial notice of the Chapter 13 Standing Trustee's Interim Statement and the Court's records which show that the Debtor has previously filed 13 other bankruptcies.

3

City West's secured claim. Proceeding No. 18. Schedule J showed Mr. Flowers' current house payment to be $392.57 a month. Movants did not object to the Debtor's Plan. This Court confirmed the Debtor's Plan on March 10, 2005.

Although the Movants contend that no Plan payments have been received for 2005, Mr. Flowers testified that he paid on the Property for January through March of 2005. He offered a copy of one of his checks sent to Jemison Realty Co., Inc. in the amount of $392.57. Debtor's Ex. 4. The Debtor testified that this check had not been cashed, along with other checks he had allegedly sent them, but that he had caught up on the arrearage. Mr. Flowers contends he is only behind three payments for 2005: April, May and June. He testified that due to sickness and unemployment in May, he was not able to stay current on his payments, but that he is presently employed.

On June 22, 2005, the Movants filed a Proof of Claim, noting the basis to be "purchase money mortgage." Claim No. 9. Written above this, the Movants added "rent." Id. There is a dispute over who has an ownership interest in the Property. The Movants contend they have record title to the Property and that Mr. Flowers is a lessee. The Debtor maintains that he and his wife own the Property. The Movants filed this Motion for Relief from the Automatic Stay on July 21, 2005, alleging the Debtor is behind on his payments and seeking relief from the automatic stay to proceed to take possession of the Property.

## II. CONCLUSIONS OF LAW

### A. The Automatic Stay

The filing of a petition for relief under any chapter of the Bankruptcy Code operates as a stay of certain actions. 11 U.S.C. § 362(a). Typically, the actions stayed are actions by creditors to recover from the debtor property of the debtor, or property of the estate, for a debt that arose prior

4

to the petition date. "[A] mere possessory interest is sufficient to invoke the protection of the automatic stay." In re Johnson, 16 B.R. 193, 195 (Bankr. M.D. Fla. 1981). In 11 U.S.C. § 541(a)(1), the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." See Central Bank of the South v. Thomas (In re Thomas), 121 B.R. 94, 99 (Bankr. N.D. Ala. 1990).[12] The legal history of 11 U.S.C. § 541(a)(1) suggests "[t]he Debtor's interest in property also includes 'title' to property, which is an interest, just as are a possessory interest or leasehold interest, for example." Id. Also considered in determining adequate possessory interests of property are payments made and received and "unbroken occupation" of the property. Id. at 102.

Mr. and Mrs. Flowers signed a Promissory Note to Mr. Floyd and signed two copies of the Mortgage Deed and had it notarized and recorded. The Property is shown as owned by Mr. and Mrs. Flowers according to the Tax Assessment dated November 23, 2003. Mr. Flowers and his family occupy the Property, have treated it as their own and believe it belongs to them. Since acquiring the Property, he has made payments on the home as shown by his receipts. The Movants dispute that Mr. Flowers owns the Property and they claim title to the Property and contend the Debtor is only a lessee of the Property. However, the Movants' Proof of Claim referred to the claim as "purchase money mortgage" and "rent." So even Movants' claim is inconsistent and inconclusive as to their interest and the interest of the Debtor and his wife. This Court finds that it does not have to decide who has title to resolve the relief from stay. It is undisputed that Mr. and Mrs. Flowers reside in and on this real Property and have for several years. This possessory interest alone entitled them to the

---

[12] See also United States v. Whiting Pools, Inc., 462 U.S. 198, 204-205, 103 S. Ct. 2309 (1983)("phrase 'all legal and equitable interests of the debtor in property as of the commencement of the case' is to be broadly construed").

5

protection of the automatic stay. This Court will limit its consideration to the possessory interest only because the Motion for Relief can be resolved solely on that basis.

A party in interest, such as the Movants, may obtain relief from the automatic stay under the provisions of 11 U.S.C. § 362(d). Subsection (1) of § 362(d) provides that the court shall grant relief from the stay upon a showing of "cause" including (but not limited to) the lack of adequate protection of an interest in property.[13] Subsection (2) of § 362(d) provides that the court shall grant relief from the stay of an act against property of the debtor or of the estate if the debtor does not have equity in the property and the property is not necessary to an effective reorganization.[14] Subsection (3) of § 362(d) applies only in single asset commercial real estate cases and, therefore, is not applicable to this case.

The movant must carry the initial burden of establishing a prima facie case for relief before

---

[13] 11 U.S.C. § 362(d)(1) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

[14] 11 U.S.C. § 362(d)(2) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

    (2) with respect to a stay of an act against property under subsection (a) of this section, if–
        (A) the debtor does not have an equity in such property; and
        (B) such property is not necessary to an effective reorganization;

6

Case 04-07840-TOM13   Doc 65   Filed 09/09/05   Entered 09/09/05 07:54:27   Desc Main
Document    Page 6 of 13

the debtor is required to go forward with his proof. Sonnax Industries, Inc., v. Tri Componetry Products Corp (In re Sonnax Industries, Inc.), 907 F.2d 1280 (2nd Cir. 1990); see also In re Marvin Johnson's Auto Service, Inc., 192 B.R. 1008 (Bankr. N.D. Ala. 1996). The Movant also has the ultimate burden of proof on the issue of the debtor's equity in the property. 11 U.S.C. § 362(g)(1). The debtor has the burden of proof on all other issues. 11 U.S.C. § 362(g)(2).

### B. Relief from Stay under 11 U.S.C. §362(d)(2)

Subsections (A) and (B) of § 362(d)(2) are expressed in the conjunctive. Therefore, in order to grant the relief requested, this Court must find both that the Debtor does not have any equity in the property and that the property is not necessary to an effective reorganization. A debtor lacks equity under § 362(d)(2)(A) when the balance of all debts secured by liens on the property exceeds the fair market value of the property. Prestwood v. United States (In re Prestwood), 185 B.R. 358, 361 (M.D. Ala. 1995). The Movants bear the burden of proving the Debtor's lack of equity in the Property. The Movants filed a Proof of Claim for an arrearage related either to a purchase money mortgage or rent in the amount of $6,957.40. At the hearing, the Movants offered no other evidence establishing the amount or existence of the mortgage or rent. Therefore, either Movants did not seek relief under this section because of the dispute of ownership or Movants failed to prove the lack of equity. Either way, the Movants' failure to satisfy § 362(d)(2)(A) obviates any discussion of § 362(d)(2)(B) and relief from stay must be denied under § 362(d)(2).

### C. Relief from Stay under 11 U.S.C. § 362(d)(1)

According to 11 U.S.C. § 362(d)(1), the court shall grant relief from stay upon a showing of "cause" including the lack of adequate protection of the movant's interest in the property. Cause under § 362(d)(1) is not defined by the Bankruptcy Code. Courts are left to determine whether cause

7

exists for granting a relief from stay based on the totality of circumstances in each case. Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3rd Cir.1997); In re Brown, 290 B.R. 415, 423 (Bankr. M.D. Fla. 2003). Legislative history indicates that the "'facts of each request will determine whether relief is appropriate under the circumstances.'" In re Mazzeo, 167 F.3d 139, 142 (2nd Cir. 1999)(quoting H.R.REP. NO. 95-595, at 343-44 (1977), reprinted in 1978 U.S.C.C.A.N. 6300).

The Court should "consider the policies underlying the Bankruptcy Code as well as the competing interests of the creditor, debtor, and other parties in interest" when exercising its discretion in granting a motion for relief for cause. In re Borbidge, 81 B.R. 332, 335 (Bankr. E.D. Pa. 1998). Thus, cause is an inherently broad and flexible concept, allowing the bankruptcy court to resolve matters based on the unique facts of each situation.

### 1. Adequate Protection

Adequate protection is not explicitly defined in the Bankruptcy Code. However, the legislative history of the Code reveals that adequate protection is a concept meant to "insure that the secured creditor receives the value for which he bargained." Martin v. United States (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985) (quoting S. REP. No. 989, 95th Cong., 2d Sess. 53, reprinted in 1978 U.S.C.C.A.N. 5787, 5839). The secured creditor's benefit of his bargain includes receipt of principal and interest payments, and upon default thereof, the right to foreclose on its interest in the property and to sell the property and reinvest the proceeds. In re Wolsky, 53 B.R. 751, 755 (Bankr. D. N.D. 1985). Congress intended for the value received by the secured creditor to be a concept adaptable to the "varying circumstances and changing modes of financing" with respect to each bankruptcy case. Martin, 761 F.2d at 474, (quoting H.R. REP. No. 595 at 339, 1978 U.S.C.C.A.N. 5963, 6295). In other words, whether a creditor is adequately protected should be determined on a

8

case-by-case basis.

The Code provides illustrations of what constitutes adequate protection ensuring that the secured creditor receives the value of his bargain. Under 11 U.S.C. §§ 361(1) and (3),[15] a secured creditor could receive periodic cash payments for depreciation of the value of its interest in the collateral during the plan or other relief which is the "indubitable equivalent" of that creditor's interest in the collateral during the plan. The phrase "indubitable equivalent" is also not defined in the Code, although Congress intended for it to mean "realization by the [secured party] of the value of its interest in the property involved." Martin, 761 F.2d at 476 (quoting H.R. REP. NO. 595 at 340, 1978 U.S.C.C.A.N. 5963, 6296).

While periodic adequate protection payments are one way to protect a secured creditor, an "equity cushion may itself provide adequate protection, obviating the need for periodic payments to protect the entity against the decline in value." 3 Collier on Bankruptcy ¶ 361.03[1] (Lawrence P. King, ed., 15th ed. rev. 1999). Judge Benjamin Cohen noted that "if a debtor has equity in a property sufficient to shield the creditor from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, then the creditor is adequately protected." In re Mathews,

---

[15] 11 U.S.C. §§ 361(1) and (3) provide:

When adequate protection is required under section 362. . . of this title of an interest of an entity in property, such adequate protection may be provided by--

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title. . . results in a decrease in the value of such entity's interest in such property; . . .

> (3) granting such other relief. . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

9

208 B.R. 506, 510-11 (Bankr. N.D. Ala. 1997) (quoting In re James River Assocs., 148 B.R. 790, 796 (E.D. Va. 1992)).

The Movants did not establish the exact amount of a mortgage balance or rent arrearage, although their claim is for $6951.40. The Debtor's bankruptcy schedules reflect the fair market value of the Property to be $53,500. The evidence before this Court shows that the Debtor has sporadically paid on the obligation to City West. The Debtor offered evidence that he made payments to City West in 2003 and 2004. The Movants contend the Debtor has made no payments for 2005. The Debtor disputes this, acknowledging an arrearage only for April through June. The Debtor testified that he got behind on the payments for these months due to unemployment and sickness, but he is currently employed and ready to resume payments. Admittedly, inconsistent or sporadic payments in some cases can be grounds for relief from stay. However, there is also a strong policy in favor of allowing people to retain their homes.[16] Mr. Flowers was truthful, candid and credible in his testimony and has provided the Court a reasonable justification for the missed payments. He is also paying other obligations by making his Chapter 13 payments and the Court is not persuaded that Movants are irreparably harmed by allowing the Debtor to resume the regular payments and to pay the arrearage. Therefore, the Court concludes that relief from stay is due to be denied to allow the Debtor an opportunity to amend his confirmed plan and retain his home.

### 2. Binding Effect of Confirmation

A Chapter 13 Plan that is confirmed binds the debtor and his creditors. 11 U.S.C. § 1327(a). "[A] bankruptcy court's order confirming a plan of reorganization is given the same effect as any

---

[16] "[T]he desire of homeowners to save their homes through Chapter 13" is consistent with the legislative intent behind the Bankruptcy Code. Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle), 12 F.3d 1008, 1010 (11th Cir. 1994).

10

district court's final judgment on the merits." Id. (citing In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir. 1990), cert. denied, 498 U.S. 959, 111 S. Ct. 387 (1990)). "An order confirming a Chapter 13 Plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing." Green Tree Financial Corp. v. Garrett (In re Garrett), 185 B.R. 620, 622 (Bankr. N.D. Ala. 1995) (quoting Anaheim Savings & Loan Assoc. v. Evans (In re Evans), 30 B.R. 530, 531 (9th Cir. BAP 1983). Once confirmed "the binding effect of the order precludes any of the parties from relief from the automatic stay based upon any facts occurring pre-confirmation." Id. at 623 (citing Lawson v. Lackey, 148 B.R. 626, 627 (Bankr. N.D. Ala. 1992)). Those parties affected include "debtors, creditors, trustees, and other parties in interest." Id. at 622. Res judicata "bars a court from relitigating issues that have been litigated in a cause [and] also bars a court from litigating the issues that may have been litigated.." In re Albert Young, Jr., 281 B.R. 74, 79 (Bankr. S.D. Ala. 2001). Confirmation orders are final judgments on the merits. Id. at 80.

On March 10, 2005, this Court confirmed the Debtor's Chapter 13 Plan. The Plan listed the debt owed to City West as long-term debt and provided that City West would be paid monthly. The Movants did not object to the Plan and raised no issue concerning the treatment of City West's claim as long-term debt. The Movants now ask this Court to treat Mr. Flowers' debt as rent, rather than a mortgage. The Movants' Proof of Claim filed on June 22, 2005, noted the basis for the claim to be "purchase money mortgage" and "rent." The Debtor has maintained the Property belongs to him and that City West has a mortgage interest in the Property and all of the schedules and the Debtor's Plan are consistent with this assertion. The claim filed by Movants asserts two inconsistent grounds for the basis of that debt. Thus, the Court finds that the Plan as confirmed is binding on Movants and their attempt to now call the debt rent rather than a purchase money mortgage is barred by the

11

doctrine of res judicata. Since the Plan treated the debt as a mortgage and this Plan was confirmed, the Movants can not now assert to the contrary that the debt is rent; such an assertion is untimely.

### III. CONCLUSION

The Court finds that the Debtor does have an interest in the Property and that the Movants are adequately protected so long as the Debtor makes his payments pursuant to the Plan.

Based on these findings and conclusions, the Court finds that the Movants' Motion for Relief is due to be denied under § 362(d), conditioned upon the Debtor's continued payments pursuant to the Plan. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the Movants' Motion for Relief from the Automatic Stay is **DENIED**.

Dated this the 8th day of September, 2005.

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM:eaj
xc: Cindee Dale Holmes, Attorney for Debtor
Henry Taliaferro, Attorney for Movants
Charles King, Assistant Chapter 13 Trustee